1997 OK CIV APP 85

## NORTHERN OKLAHOMA BUTANE, Plaintiff/Appellant,

v.

OKLAHOMA EMPLOYMENT SECURITY COMMISSION; Oklahoma Employment Security Commission Assessment Board; and Oklahoma Employment Security Commission Board of Review, Defendant/Appellees.

No. 89176.

Court of Civil Appeals of Oklahoma, Division No. 1.

Nov. 25, 1997.

26. Rule 9.7(D)(5), 22 O.S.Supp.1996, Ch.18, App., *Rules of the Court of Criminal Appeals.*

Richard A. Mildren, Oklahoma City, for Appellant.

David T. Hopper, Oklahoma City, for Appellee.

## OPINION

HANSEN, Presiding Judge:

¶1 Appellant, Northern Oklahoma Butane (Northern), seeks review of a trial court order holding Appellee, Oklahoma Employment Security Commission (Commission), properly increased Northern's Unemployment Compensation Fund contribution rate for 1995. The parties agree there is no controversy as to the facts. Northern's sole contention on appeal is that Commission erred in its interpretation of the Oklahoma Employment Security Act, 40 O.S.1991 § 1–101 *et seq.* (the Act), when Commission calculated Northern's contribution rate.

¶2 An employee of Northern's became unemployed and collected six weeks of unemployment benefits during 1994. As the result of the benefits payment, Commission increased Northern's contribution rate from 0.1% to 2.8%. Northern requested redetermination, and after the increased rate was affirmed by Commission, Northern appealed to Commission's Assessment Board. The Assessment Board confirmed Commission's action.

¶3 Northern, pursuant to § 3–401 of the Act, filed a Petition for Judicial Review in the district court. The district court held Commission properly applied the law to the facts and denied Northern's petition. As neither the evidence nor fraud is at issue, our review will be confined to questions of law. 40 O.S.1991 § 3–404.

¶4 Calculation of Northern's contribution rate requires consideration of a number of interrelated sections of the Act. However, Northern's contention of error is based on a mistaken notion as to what the term "benefit wages" means. This misapprehension is exemplified in several statements Northern makes in its brief in chief. For example,

Northern asserts: "In the present case, a former employee of Northern received *benefit wages* for only six (6) weeks of unemployment. However, OESC calculated the employer's ratio as if *benefit wages* had been paid for one (1) full year (52 weeks)". (Emphasis added).

¶ 5 Northern has misconstrued *benefit wages* as if they were *benefits* under the Act. Section 1–203 of the Act defines *benefits* as money payments payable to an individual as provided in the Act with respect to his unemployment. On the other hand, § 1–221 of the Act, as in effect at the time relevant here, defines *benefit wages* as:

... the wages earned by a claimant during his *base period* which are not in excess of the current maximum weekly benefit amount ... multiplied by the maximum number of weeks for which benefits could be paid to any individual ... multiplied by three; provided, however, no wages shall be included as "benefit wages" unless and until the claimant has been paid benefits for two (2) weeks in one (1) benefit year. (Emphasis added).

■ ¶ 6 *Wages* means all remuneration for services from whatever source. 40 O.S. 1991 § 1–218. Thus, the term *benefit wages* is not, as Northern suggests, those funds one receives when one is unemployed through no fault of his own, but rather is a statutorily created element of the formula used to determine what each employer must contribute to the reserve used to pay *benefits* to those so unemployed.

■ ¶ 7 As defined above, *benefit wages* are, with certain limitations, the wages earned by a claimant during his *base period. Base period* is in turn defined in § 1–202 as "the first four (4) of the last five (5) completed calendar quarters immediately preceding the first day of an individual's benefit year". By definition then, *benefit wages* includes those wages earned by a claimant during four calendar quarters, *i.e.* the fifty two weeks which Commission properly used in its calculation of Northern's contribution rate.

1. Section 1–221 was amended in 1995 to increase this trigger period to five weeks. Laws

The two week period[1] in § 1–221 was but a trigger for *benefit wages* to be determined for use in that calculation.

■ ¶ 8 Oklahoma uses the *benefit-wage ratio* system to calculate employer's contribution rates. 40 O.S.1991 § 3–107. The ratio is the basic variable to establish the relative incidence of unemployment among workers of various employers. 1C Unemp.Ins.Rep. (CCH) ¶ 1120. In a *benefit-wage ratio* system, "[t]he relative experience of employers is measured by separations of workers that result in benefit payments, *but the duration of their benefits is not a factor*". *Id.* (Emphasis added).

¶ 9 We hold Commission correctly construed and applied the pertinent sections of the Act. The district court's judgment in favor of Commission is therefore AFFIRMED.

¶ 10 Finding this proceeding for judicial review has been instituted with reasonable grounds, Commission's request for an award of costs in accordance with § 2–302 of the Act is DENIED.

JOPLIN and BUETTNER, JJ., concur.

1995, c. 340, § 3, eff. Jan. 1, 1996.